FbeeMAN, J.,
delivered tbe opinion, of tbe court:
The bill filed in this case is to enforce collection of a balance claimed to be due complainant by defendant McLean, as one of the firm of Lloyd & McLean.
The first question to be determined is whether a claim known in the record as the “Zephyr Claim,” for $2,193.05 was transferred to complainant as an absolute payment, or only as a collateral, to be credited on complainant’s debt when collected. It is alleged in complainant’s bill that it was transferred as collateral only, and an exhibit of the instrument by which it was transferred is made as evidence of this fact. How this is, is the first issue made between the parties. Defendants say that the assignment was not made as a collateral, but taken as absolute payment or credit on the debt due complainants. If defendants are correct, then McLean owes complainant nothing, and the bill fails, so that other questions need not be considered.
The proof on this question is substantially as follows: In 1867, when the assignment was made, Lloyd &• McLean, who had been doing business in the way of supplying steamboats, were considerably indebted, much pressed, if not unable to meet their engagements. They were indebted to Oliver & Co: over three thousand dollars, which was being pressed for payment. In fact it is evident *282 Oliver & Oo. were uneasy, and with good cause, as to tbe prospects of realizing their debt. McDonough, another 'creditor of Lloyd & McLean, was also pressing them for payment, and was anxious to get the claim against the steamer Zephyr and her owners, which was then in suit in the common law court of Memphis. Under these circumstances McLean & Lloyd went to Oliver &■ Co. and stated to them the facts in reference to the claim in suit, and proposed to let them have it in preference to McDonough, probably on the ground that their (0. & Co.’s) debt was the oldest, at any rate one they preferred to pay. It is probable that McLean & Lloyd stated that McDonough was about to attach the claim, and that they would be closed up, as Oliver swears that he went with “break-neck speed,” to use his own language, to get the assignment completed so as to secure the claim before McDonough. McLean stated, no doubt, that the claim was good, and was a lien on the boat, because based on supplies furnished the boat. It is clear both parties so understood the matter. Oliver says he took it for granted that the claim was a lien, “as I had always understood supplies were a lien in such cases,” he adds, however, “I might have been a little too smart and thought I knew it all.” Oliver, however, insists that the agreement was that the claim was only to be taken as collateral, and be a credit or payment in the event it was collected, or to the extent realized on it. McLean, however, is equally explicit in swearing that it was taken as an absolute payment, and with no conditions whatever. In this he is corroborated by Lloyd, who was present at the time, and who tells a very frank story about the whole matter, and says the precise terms of their contract, as he understood it, was put into the paper transferring the claim. lie also adds a circumstance favoring his view, which is, that McDonough ivas eager to take the claim at its par value, all parties supposing the claim good and a lien on the boat.
Assuming the matter pretty equally balanced between *283 the parties tiras far, we turn to the written assignment made at the time, as certainly furnishing high, if not the highest, evidence of what was the real terms of the contract of the parties. It is as follows:
“Know all men by these presents, that we, Horatio Lloyd and William McLean, partners, doing business in the city of Memphis under the firm name of Lloyd &' McLean, for the consideration of $5 to us in hand paid by J. K. Oliver & Co., of the same place, and for the further consideration of $2,193.05 paid to us by said J. 1ST. Oliver & Co., by giving credit for the same, on a debt held by them against us, have assigned, transferred, and set over, and ive do by these presents, assign, transfer, and set over to the said J. H. Oliver & Co. our entire interest in a certain suit now pending in the law court of Memphis, in which we are plaintiffs and the steamer Zephyr and her owners defendants. Said suit is for the sum of $2,193.05, and the said J. H. Oliver &■ Co. are hereby fully authorized to collect for their own and sole use whatever may be received on said suit, and their receipt shall be valid. Witness our hands and seals.”
Signed by the parties.
This paper was prepared by the attorney of Oliver & Co., and under the direction of Oliver, who gave him the facts at the time. It is proper to add here that the suit failed on hearing against the boat and her owners, probably for supposed want of jurisdiction in a state court, or it may have been on the ground that she was being run by other parties, under a “charter party” at the time. However, it failed on some ground, and nothing was recovered. On these facts it is clear respondents, if liable at all, must either be held on their special contract or the agreement that the claim was to be tahen as collateral, or on the grounds of fraud. In the first case, no payment has been made, and consequently the balance remains due on their original account. The question whether the claim was taken,as a security simply, or accepted in absolute *284 satisfaction of the debt, is one of fact. 1 Sneed, 514. This principle is too clear to need the support of authority, as the parties certainly had the right in such a case to make whatever contract they chose, not in violation of law or public policy, and the creditor might well receive payment either in money, property or debts or liabilities of third parties. The instrument on its face expresses with distinctness the idea that it was am assignment made in consideration of a credit for the transfer on the debt held by Oliver & Co. It would be strange if it had been taken as collateral security only, that in so formal a document, drawn by a lawyer, it should not have been so expressed. Wo think it clear from the terms of this instrument, as well as the attending circumstances, that both parties thought the claim perfectly good, both believed it a lien on the boat, and Oliver & Co., being anxious to secure their imperiled debt, eagerly accepted the claim and gave the credit with no thought whatever of taking it as a collateral. This was evidently an afterthought, arising after failure tó. recover judgment in the law court, this disappointing their confident expectation in the result. The question remains whether the bill can be sustained .on the ground of fraud or misrepresentation made by McLean & Lloyd as to its being good, and a lien on the boat.
It may be conceded that a misrepresentation of facts, whether with or without knowledge of their falsity, upon which a party is induced to act, and does act, is as conclusive ground in equity for relief as an assertion wilfully false, for it operates equally as a surprise and imposition on the other party, though there is less of moral turpitude in such representations in the first case than in the latter. See Heis. Dig., p. 483, “Misrepresentation,” and cases cited. Yet it is equally well settled that mistake of law is not in general any ground for relief, unless such mistake was superinduced by the other party, or there be misplaced confidence or other elements of fraud, such as weakness on the part of the party misled, or other like influ- *285 enees. Ibid., title, Mistake, p. 438. But here we find no misrepresentation of any fact; on the contrary, as far as we can see, every statement of fact made by Lloyd & McLean was true. The account was for supplies furnished the boat; it was in suit imthe common law court of Memphis, as to whether such a claim was a lien on the boat or not. This was an inference or legal opinion to be drawn from the facts, and the one party knew as much on this subject as the other, at any rate had equal means of knowledge, and this fact of a lien supposed to exist was evidently a reason for eagerly desiring to get this claim. In the language of the supreme court of the United States in the case of Blease v. Garlington, 2 Otto, 9: “The whole subject was equally open to both for examination and inquiry; under such circumstauces neither party is presumed to trust the other, but to rely on his own judgment.”
A misrepresentation of a matter of law does not constitute fraud, because the law is presumed to be equally within the knowledge of both parties where the facts are known, and there is no special confidence reposed or trust violated. Kerr on Frauds, p. .90. Here there has been at most but an expression of an erroneous opinion as to the claim being a lien on the boat, and therefore good. But it is clear from the proof that the party did not rely on the opinion of Lloyd & McLean as to this, but as he says, understood it to be that way himself, in which, as he says, “he may have been too smart and thought he knew it all,” this remark showing pretty clearly that he acted on his own judgment as to- this matter. In addition it is seen that the interest of the parties in the suit is assigned, thus designating precisely the matter in hand.
We conclude that as there was no misrepresentation of the facts, and no misplaced confidence, no breach of faith on the part of Lloyd & McLean, and the party chose, with the facts before him, to take an assignment of the claim, a suit at law, as an unconditioned credit, with no guaranty whatever that it should be collected, he cannot now have *286 relief because it has turned out differently from what ho believed would be the result. Buying a. lawsuit, he takes the chances as to the fruits of the litigation, nothing more. He loses by reliance on his own judgment, and by failure to ask or require a guaranty, which in all probability would have been given if required, and must bear the result of his want of precaution or foresight. This case is not like the case of Smith v. Click, 4 Hum., 186, where a party paid for property in bank notes which were known to> be worthless, and which he had passed before and had been returned to him. There1 was actual fraud and concealment of material facts, which entitled the party to relief; here there was nothing of the kind, but the facts truly stated. The error, if any, was one of judgment as to the legal result of the facts.
We may add that it is not by any means certain that a maritime lien did not exist against the boat for supplies furnished if it had been sought to be enforced in a federal court having jurisdiction in such cases, the home port of the boat, as we understand, having been in St. Louis, Mo., and not Memphis. However, we determine nothing as to this question, as we do not deem it material to' the proper conclusion in the case. The result is, the chancellor’s decree must be reversed and the bill dismissed with costs.