PEOPLE'S BANK OF SPRINGFIELD *v.* H. C. TRUE.

(*Nashville,* December Term, 1920.)

1. **BANKS AND BANKING.** Cashier not presumed to have communicated knowledge to bank when interest antagonisitc.

Where defendant gave a note to L., who was acting on behalf of his father, and the father, in subsequently selling the note to the bank of which L. was cashier, negotiated both with L. and the president of the bank, there was no presumption that L. communicated to the bank his knowledge of the facts out of which the note arose, as in assisting in the sale of the note for the benefit of his father he was acting in a capacity where his interest was antagonistic to that of the bank. (*Post, pp.* 175, 176.)

Cases cited and approved: Provident, etc., Assurance Society v. Edmonds, 95 Tenn., 53; Wood v. Green, 131 Tenn., 583; Smith v. Bank, 132 Tenn., 147.

2. **FRAUDULENT CONVEYANCES.** Grantee giving note by way of restitution liable to purchaser having knowledge of fraudulent transaction.

If property was conveyed to defendant to prevent the grantor's creditors from reach it, defendant could not escape liability on a note executed by him to the grantor by way of turning back to the grantor part of the proceeds of the lands, though a purchaser of the note knew of the fraudulent transaction, as the note was not in furtherance of the fraud but in disaffirmance thereof. (*Post, p.* 176, 179.)

Cases cited and approved: Stanton v. Shaw, 62 Tenn., 12; Insurance Co. v. Walker, 116 Tenn., 1.

FROM ROBERTSON.

Appeal from the Chancery Court of Robertson County. —Hon. J. W. Stout, Chancellor.

Hamilton Parks and R. L. Peck, for appellant. A. L. Dorsey, for respondent.

Mr. Justice Green delivered the opinion of the Court.

This suit was brought by the People's Bank of Springfield, hereafter called complainant, against H. C. True, hereafter called defendant, to recover the balance due on a note of $7,000. An answer was filed denying liability, and by way of crossbill defendant sought to compel a cancellation of the note.

The note was executed payable to his own order by defendant, indorsed in blank by him, and delivered to R. F. Long for the benefit of his father, E. B. Long, and negotiated by the latter to complainant. Two payments were made on the note, one of $500 and one of $1,000.

On the hearing the chancellor found that complainant was an innocent purchaser of the note for value before maturity and decreed in its favor. From this decree defendant has appealed to this court.

A mass of proof was taken in the case, which, however, we do not find it necessary to review. Whatever may be the merits of the case between defendant and the Longs, we must agree with the chancellor that the complainant is an innocent holder of the note.

Undoubtedly the complainant took the note for value. It gave in consideration thereof another note for $3,000 signed by J. A. Long & Co. and another note for $2,000 signed by R. E. Glover & Co., in addition to $1,500 cash.

This made a total consideration of $6,500. The first payment of $500 was made on the note before the bank bought it. It is not denied that the bank obtained the note before its maturity, and the only debatable question is whether the bank took the note under such circumstances as to charge it with notice of defenses alleged to exist in favor of defendant as against the Longs.

There are two theories as to the origin of this note—the facts incident to its execution. One theory is advanced by the complainant, and the other by the defendant. It will not be necessary to determine which of these theories is correct, since upon either theory the bank is still entitled to recover.

The defendant says that he, along with other gentlemen in Robertson county, became involved in a land speculation in Texas. He says that as a result of this venture his associates, among whom was E. B. Long, became indebted to him in the sum of about $11,000; that to satisfy this indebtedness E. B. Long conveyed to defendant certain lands which he (Long) owned in Robertson county, Tenn.; that later E. B. Long's associates refused to contribute to him anything on account of the joint indebtedness to defendant which Long had settled as aforesaid. Defendant says that when it became apparent to Long that the others would not reimburse him, Long began to make demands on defendant to give back his lands or the proceeds thereof. Defendant says that Long was quite persistent in these demands and kept after him all the time; that finally, while he did not conceive that he owed Long any thing, he turned over to R. F. Long the $7,000 note here in suit with the understanding that said note was not to be col-

lected. Defendant says that his agreement with R. F. Long was that the father, E. B. Long, should have the profits of the sale of the Robertson county lands conveyed as aforesaid by E. B. Long to defendant, together with some other personal property. Defendant insists that the note was only delivered to R. F. Long as a sort of protection to E. B. Long, in case defendant should die or anything should happen to him, and defendant reiterates that it was fully understood by both the Longs that the $7,000 note was not to be collected.

R. F. Long was at that time the cashier of the complainant bank. Defendant contends that since R. F. Long was fully advised as to the conditions under which the note was executed and knew that it was not to be collected, the complainant bank became affected with the knowledge which R. F. Long had, and that it is not an innocent holder of the note.

It is fair to say that R. F. Long utterly denies that he had any such understanding as is claimed with defendant, but he claims that he took the note understanding that it was to be paid promptly. In fact, R. F. Long says that the note originated in an entirely different way, as will hereafter appear.

It is manifest, if we accept defendant's theory of the facts, that R. F. Long was acting in these negotiations with defendant as the agent of the father, E. B. Long.

It appears otherwise in the proof that when the $7,000 note was negotiated to the complainant, E. B. Long conducted such negotiation with both R. F. Long, the cashier, and H. T. Stratton, the president, of complainant. It is not insisted that Stratton had any knowledge

of the agreement said to have existed to the effect that the note should not be collected.

So far as the knowledge of R. F. Long is concerned, there is no presumption that he communicated such knowledge to his principal, the complainant, for in assisting about the sale of the note to complainant for the benefit of his father, R. F. Long was acting in a capacity where his interest was antagonistic to that of complainant. *Provident, etc., Assurance Society* v. *Edmonds,* 95 Tenn., 53, 31 S. W., 168; *Wood* v. *Green,* 131 Tenn., 583, 175 S. W. 1139; *Smith* v. *Bank,* 132 Tenn., 147, 177 S. W., 72.

Had R. F. Long been the sole representative of the complainant in this transaction as well as of his father, then the complainant would have been charged with the knowledge of R. F. Long under *Smith.* v. *Bank, supra.* The testimony, however, shows that Stratton was looking out for the complainant's interest in the purchase of the note and represented complainant, partly, at least. Stratton knew nothing of the agreement that the note was not to be paid, and for the reasons stated, under the authority cited, the knowledge of R. F. Long cannot be imputed to the complainant.

The complainant's theory with reference to the origin of the note sued on is that E. B. Long became very much involved as a result of the land speculations in Texas referred to above. Complainant insists that nothing was due to defendant whatever as a result of these operations and denies that E. B. Long conveyed his lands to defendant for any such a purpose. It claims that the whole purpose of this conveyance was to cov-

er up E. B. Long's property and to prevent it from being reached in satisfaction of the numerous debts which he had incurred in Texas and at home. Complainant contends that the $7,000 note was given by way of turning back to E. B. Long part of the proceeds of his lands which had been fraudulently conveyed to defendant and sold by the latter.

The defendant insist that if this be the truth of the matter, there can be no recovery upon the note by the complainant. This upon the idea that the note grew out of a fraudulent transaction and that a court of equity will not lend its aid under such circumstances.

We think that such argument rests on a misconception of the present situation. The note, according to complainant's theory, was not given in furtherance of a fraudulent transaction, but was given by way of restitution of the proceeds of the property fraudulently conveyed. Even, therefore, if the complainant had knowledge of the original fraudulent conveyance as it appears from the bill it did have, it still may recover on the note.

"While a fraudulent grantee is under no legal obligation to reconvey, it is said he is under a moral obligation to do so, and all subsequent acts done by him in execution of this duty should be favorably considered in equity. If in fulfillment of his moral obligation he makes a reconveyance, such act will be binding on him, and if the rights of no innocent third person have intervened, the fraudulent grantor will become revested both in law and equity with the title previously conveyed to his grantee; and the grantee will be estopped

from thereafter setting up any claim to the property."
20 Cyc., 619.

This rule is recognized in at least two cases in Tennessee.

In *Stanton* v. *Shaw*, 62 Tenn. (3 Baxt.), 12, a purchaser of real estate to defeat his creditors procured the title to be taken in the name of the third person. This third person subsequently reconveyed to the true owner. It was held that the creditors of the third party, not having attempted to subject the property to their debts while it was in the name of said third party, could not reach it after the reconveyance to the real owner, although the reconveyance was, of course, voluntary.

In *Insurance Co.* v. *Waller*, 116 Tenn., 1, 95 S. W., 811, 115 Am. St. Rep., 763, 7 Ann. Cas., 1078, property was fraudulently conveyed to a wife as trustee to put it beyond the reach of her husband's creditors. Later she reconveyed to the husband. The conveyance was upheld, and the husband held to be vested with the entire legal and equitable title to the property, so as to enable him to recover upon insurance policies covering the property and issued in his name.

The lands conveyed to defendant had been sold by him, and if this conveyance was in truth fraudulent, it was his duty to restore the proceeds of the sale. A note given for such purpose cannot be considered as in furtherance of any fraud, but is rather in disaffirmance and should be approved.

For the reasons stated, we think there was no error in the decree of the chancellor, and it must be affirmed.