## J. E. LeSUEUR v. FRANKLIN LIMESTONE CO.

Middle Section. August 1, 1931.

Petition for Certiorari denied by Supreme Court, February 13, 1932.

Louis Leftwich and Thomas G. Watkins, both of Nashville, for appellant, LeSueur.

Roberts & Roberts, of Nashville, for appellee, Limestone Co.

CROWNOVER, J. This was a suit to recover the sum of $1784.96, the cost of reconstruction of certain concrete curbing on Charlotte Avenue, in the City of Nashville, in the construction of which had been used crushed stone and screenings purchased from the defendant, and which curbing had been condemned by the City.

The bill alleges that at the time complainant purchased said crushed stone from defendant said defendant represented and warranted, expressly or impliedly, to complainant, said stone and screenings to be suitable and fit for constructing concrete curbing; and that complainant was induced to purchase said stone and screenings by the representations and warranties of said defendant, and that said crushed stone and screenings contained shale, marl or dirt, the presence of which caused disintegration of the concrete.

Defendant answered and denied that any warranty whatever was made by the defendant as to the kind or quality of stone and screenings furnished by defendant on this piece of construction work, or that the stone was defective in any way, or that the disintegration of the concrete was caused by the presence of any foreign substance in the material sold, and alleged that the disintegration of the concrete was caused by improper mixture or unskillful workmanship.

The Chancellor found that there was no warranty, express or implied, but that at the time the contract of purchase was entered into Rodes, the president of the defendant company, put LeSueur on notice that the materials he was buying would not be accepted by the City Engineer. Complainant's bill was dismissed.

Complainant has appealed from said decree to this court and has assigned errors, which are, in substance, that the Chancellor erred:

(1) In holding that there was no express or implied warranty that the crushed stone furnished by appellee was free from shale, marl or dirt, and was suitable for the construction of the curbing.

(2) In failing to hold that the distintegration of the curbing was due to the shale, marl or dirt in the crushed stone furnished from the Franklin quarry.

J. E. LeSueur, the complainant in this cause, in May, 1922, entered into a written contract with the City of Nashville, whereby he agreed to construct certain concrete curbing on Charlotte Avenue, and executed a $2000 bond.

Mr. LeSueur called on Mr. J. E. Rodes, president of the defendant company, and asked for prices on the crushed stone to be used in the construction of the Charlotte Avenue curbing.

Mr. LeSueur was at the time over eighty years of age. He had been engaged in the contracting business for fifty years and had been doing concrete construction work for eighteen or twenty years. He had done a great deal of concrete work for the City of Nashville, but had never used crushed stone in concrete work.

Mr. Rodes stated to Mr. LeSueur that his company was operating two quarries, one at Franklin, Tennessee, and one at Whitehead, Tennessee, and that he would sell him the Franklin stone at $1 a ton f. o. b. cars at Franklin, from which point the freight rate was 57c per ton, or would sell him the Whitehead stone at $1.25

per ton, from which point the freight rate was 75c per ton. Mr. Rodes stated to him "that Mr. Southgate (the City Engineer) objected to his using Franklin screenings on city work," but that the L. & N. Railroad and many other people used it "and got good jobs out of it, but it took the required amount of cement to do it."

The Franklin quarry has a stratum of shale or marl two feet thick. This shale is soft and contains seven to nine per cent of dirt. In spite of efforts to keep this shale out of that crushed stone and screenings sold for concrete work some small particles pass into the screenings.

The City Engineer in the city street construction work had previously found that some concrete made of screenings from the Franklin quarry was not satisfactory. He went to the Franklin quarry, examined the ledge of shale, and told Mr. Rodes that he would not allow screenings from the Franklin quarry to be used on the city street work while this condition obtained.

Mr. Rodes testified that he did not sell or allow a salesman to sell any stone or screenings from the Franklin quarry without telling the customer that there were some particles of shale or marl in the stone.

Mr. LeSueur purchased three car loads of Franklin stone. Before he had finished using the third car the City Engineer noticed a pile of screenings on the street and condemned it because it contained shale, marl or dirt. Mr. Rodes, when advised of this by Mr. LeSueur, removed the rest of this third car, about 15.60 tons, and replaced it with stone from the Whitehead quarry. After this, eight cars of Whitehead stone were used on the Charlotte Avenue curbing.

It appears that the Whitehead stone was entirely satisfactory, and there is no complaint about it.

The three cars of Franklin stone were shipped first and used before the Whitehead stone was shipped.

During the first winter after the completion of the work, the concrete began to deteriorate or disintegrate in about sixty different places in a distance of about eleven blocks, the defective sections ranging in length from a few feet to more than a hundred feet. The City Engineer condemned 2725 feet on the north side of the street and 64 feet on the south side and demanded that Mr. LeSueur reconstruct the condemned portions of the curbing. This was done by him at a cost of $1784.96, for which this suit was brought.

1. We are of the opinion that what Rodes said to LeSueur did not amount to an express warranty of the quality of the stone furnished, and that under the circumstances there was no implied warranty.

Mr. LeSueur merely testified that he informed Mr. Rodes of the particular purpose for which the stone was required. He says that

in making the purchase of the stone he talked to Mr. Rodes and told him that he wanted to use it in the construction of the curbing on Charlotte Avenue, but there is no evidence that Rodes knew that LeSueur had not before used crushed stone in making concrete.

The contract between Mr. Rodes and Mr. LeSueur was verbal.

After the deposition of Mr. LeSueur was taken, Mr. Rodes testified that Mr. LeSueur came to the office of the Franklin Limestone Co. and made inquiries about prices on stone; that he personally conducted the negotiations because he had had a very troublesome law suit with Mr. LeSueur when he was a subcontractor for a portion of the Lewisburg & Northern Railroad in Williamson County. He stated that he told Mr. LeSueur that he was operating two crushed stone quarries, one at Franklin and one at Whitehead, and that he could sell him the stone from either place provided he paid cash, and that the Franklin stone could be purchased at a lower price than the Whitehead. He testified: ''I stated to him that Mr. Southgate objected to using Franklin screenings on city work, but that the L. & N. Railroad used it and we used it, and many other people used it and got good jobs out of it, but it took the required amount of cement to do it. I made no guarantee of either kind to him, simply, honestly and truthfully stated what we had to sell and how we would sell it. Whereupon he gave me an order for the first carload of Franklin stone and I shipped it to him.''

This deposition was taken on June 3, 1925, and cross-examination was reserved by complainant's counsel who was present. Mr. LeSueur's deposition had been taken in February, 1925. In October, 1930, it was stipulated by counsel for complainant and counsel for defendant that the complainant LeSueur, since the deposition of Mr. Rodes was taken, was in Florida on one occasion and unavailable, and on another occasion was ill and unavailable, and that in February, 1930, he suffered a heart attack and is now confined to his home and not in condition to testify, but it is not shown that he could not have testified at some other time.

The Chancellor found as follows:

''The testimony of Mr. Rodes that at the time Mr. LeSueur made the contract for the Franklin stone or screenings, that he stated to him that Mr. Southgate objected to using Franklin screenings on city work, has remained uncontradicted for more than five years, and the fact that counsel stipulated in 1930 after Mr. Rodes so testified in June, 1925, that Mr. LeSueur was in Florida on one occasion and unavailable, and that on another occasion he was ill and unavailable, and that in February, 1930, he had a heart attack and was not able to testify, does not break the force of this testimony nor explain why Mr. LeSueur during the five years, except on the three occasions named in the stipulation, was not called on to testify and state whether this

statement of Mr. Rodes' was true or false. As the record stands, it is uncontradicted and unexplained."

There is no proof of an express warranty. The mere statement that others had used it with good results if the required amount of cement was used did not amount to an express warranty, and the facts proven as above stated did not amount to an implied warranty, because Rodes expressly told LeSueur that the City Engineer objected to the use of the Franklin stone. The City Engineer was the man under whose supervision the work was to be done. LeSueur, in so far as the record shows, made no further inquiry, but with this knowledge proceeded to buy the cheaper stone, and Rodes was justified in making the sale to an experienced contractor without further statements or comment. We agree with the Chancellor, that:

"The uncontradicted record discloses that at the time the contract of purchase was entered into Rodes put LeSueur on notice that the material he was buying would not be accepted by Mr. Southgate, the city engineer in charge of the work LeSueur had contracted to do for the City of Nashville, and in the face of this knowledge LeSueur purchased. All the statements that Rodes made about the stone and screenings from the Franklin quarry being used elsewhere followed his statement that it could not be used in Nashville and were but an affirmation of the value of the material or a statement of his opinion of the value, and certainly the statement he made about Southgate objecting to the use of this material on the streets of Nashville was plain and unmistakable in its meaning."

We agree with the Chancellor, that there was no implied warranty. The testimony of Mr. Rodes that he told Mr. LeSueur that Mr. Southgate, the City Engineer, objected to the use of Franklin stone and screenings in city work negatives any idea that the buyer relied on the seller's skill and judgment. Sec. 15 of chap. 118 of Acts of 1919, Uniform Sales Act.

In order to set up an implied warranty it must appear, first, that the buyer made known to the seller the special purpose for which the material was to be used; and, second, that the buyer was justified in relying upon the seller's judgment. Mariash on Sales, sec. 120.

There is no implied warranty where the seller states enough to put a man of ordinary intelligence upon notice. Pantebakos v. Rockingham County L. & P. Co., 128 Atl. (N. H.), 534.

"It is a general rule that no warranty as to quality or fitness for purpose will be implied when the defects in the article are known to the buyer, or he has knowledge of facts sufficient to put him on inquiry or charge him with notice." 35 Cyc., 409.

2. We are of the opinion that the assignment that the disintegration of the curbing was due to the shale, marl or dirt in the screenings from the Franklin quarry, is not well made.

The curbing constructed on Charlotte Avenue, under this contract, extended from 31st Avenue to 42nd Avenue, on both sides of the street.

After four or five hundred lineal feet, or more, had been constructed on the Franklin quarry limestone, the City Engineer condemned that stone and the work was completed with Whitehead quarry stone.

The City Engineer, after the work was completed, condemned as defective 2725 feet of curbing on the north side of Charlotte Avenue and 64 feet on the south side.

The proof of complainant is that all the Franklin stone was used on the north side of the street. The defective curbing on the south side is accounted for by a truck having run into it, and no recovery is sought for this curbing.

The certified statement of the City Engineer shows that the disintegration of the curbing was not continuous but occurred in different places, mostly short spaces. In front of house No. 3200 on Charlotte avenue 42.3 feet were condemned; in front of house No. 3202, 36.4 feet; in front of a vacant lot, 20 feet; in front of 3204, 5 feet; and so on down to house No. 4030 where 18.6 feet were condemned, and the Tennessee School for the Blind where 13.7 feet were condemned. On the south side of the street the disintegration was likewise in patches but of shorter spaces than on the north side.

As exhibits to the deposition of Will Ellison two pieces of concrete were introduced, one made of Franklin stone and one of Whitehead, both of which pieces had been taken from the condemned sections.

Mr. Rodes testified that he had examined the condemned concrete and had found that about half of it was constructed of Whitehead stone and the other of the Franklin stone, which showed a defective mixture. He said he could identify the Whitehead stone because it had a pink tinge. This testimony is not contradicted, although the City Engineer does state that he thinks the disintegration was due to shale, marl or dirt. LeSueur subcontracted this work to two negroes, one of whom testified that he didn't know what was the matter with the concrete. Hence we are of the opinion that the disintegration was due to unskilled workmanship and this assignment must be overruled.

It results that all of the assignments of errors must be overruled and the decree of the Chancellor dismissing the bill affirmed. The cost of the cause including the cost of the appeal is adjudged against appellant and the surety on his appeal bond.

Faw, P. J., and DeWitt, J., concur.