FREEMAN *et al. v.* CITIZENS' NAT. BANK *et al.*

(*Nashville.* December Term, 1933.)

Opinion filed March 31, 1934.

400

J. L. Jones and D. R. Wade, both of Pulaski, for appellants.

R. E. Lee, of Pulaski, for appellees.

Mr. Chief Justice Green delivered the opinion of the Court.

The above styled proceeding is in reality a consolidation of three suits, heard together by agreement and approval of the chancellor. The suits are by the holders of certain notes against the makers and a guarantor of

those instruments and against the bank which transferred the instruments by delivery to the present holders. The chancellor rendered a decree against the makers and the guarantor, but dismissed the suits as to the bank, and the holders have appealed. The cases were tried upon a stipulation of facts.

The Citizens' Bank (hereafter called the bank) was a state institution conducting a banking business in Pulaski. It has been adjudged insolvent and its affairs are now being wound up by the superintendent of banks as receiver.

The Citizens' Bond & Investment Company (hereafter called the bond company) was an affiliate of the bank, the directors of the bond company being composed of the directors and finance committee of the bank. The principal business of the bond company was that of lending money on real estate and, from this record, it seems to have acted in fiduciary capacities, appearing before us as guardian of a minor in one branch of this litigation. The bond company has also been adjudged insolvent and its affairs are being wound up by a receiver.

W. L. Abernathy, Jr., was president of both institutions and we gather that he was the dominant figure in both institutions. He died by his own hand, testate, and his executor is a defendant hereto.

Abernathy and one L. L. Williams appear to have been associated in some sort of trading partnership under the name of Abernathy & Williams.

Mrs. Mary N. Hargrove is a widowed lady residing in Giles County. She was a customer of the bank. She and the bond company were the guardians of her minor son, John Nolan Hargrave.

Mrs. E. C. Freeman was a former resident of Giles

County but had removed to the State of Oklahoma. She kept an account at the bank and also rented a safety deposit box there. Abernathy was her business agent.

It is stipulated that Abernathy's estate is insolvent and will pay little or nothing, and it is likewise stipulated that Williams is insolvent and little or nothing can be made out of him.

Prior to September 1, 1928, Abernathy & Williams owned a tract of land in Giles county upon which they wished to borrow $3,000. Application was made to the bond company for this loan, to be secured by a mortgage, and the application was approved by the directors of the bond company. Four notes were thereupon executed by Abernathy & Williams, in the form of bonds, payable to the bond company, two for $500 each and two for $1,000 each.

It was recited on the face of each note or bond that it was "one of a series of four bonds of even date herewith mentioned in a mortgage deed of this date from L. L. Williams and W. L. Abernathy, Jr., to said company and duly recorded in the Register's Office of Giles County, Tennessee."

As a matter of fact, no mortgage to secure these notes was ever executed by Abernathy & Williams and, of course, no such mortgage was every put to record. Later Abernathy & Williams sold this tract of land to an innocent purchaser named Davis, he making a cash payment therefor and executing lien notes for the balance. These lien notes of Davis were subsequently acquired by the bank, and at the time of the receivership, the bank had hypothecated the Davis notes to secure a loan from its Nashville correspondent.

Under the arrangements between the bank and the

bond company, the former institution would purchase the notes belonging to the latter, and the bank would keep some of these notes by way of investment and would frequently sell such notes to its customers. No one connected with the bond company or with the bank, except Abernathy, knew of the failure of Abernathy & Williams to execute and record a mortgage securing the four notes heretofore mentioned. The bond company took these notes from Abernathy & Williams and the bank took the notes from the bond company, without knowledge on the part of either institution that the notes were not secured by registered mortgage.

It is proper to observe here that the loan to Abernathy & Williams by the bond company and the taking over by the bank of the notes representing that loan were transactions in which other officials of the bond company and the bank figured. Abernathy was not at the same time the representative of the separate contracting parties. It follows therefore that Abernathy's knowledge that no mortgage existed was not imputable to the bond company nor to the bank, although he was president of both institutions. His interest was adverse to the interest of each of his principals in this matter and, under a familiar rule, his principals were not chargeable with his knowledge. *People's Bank of Springfield* v. *True,* 144 Tenn., 171, 231 S. W., 541; *Smith* v. *Bank,* 132 Tenn., 147, 177 S. W., 72; *Wood* v. *Green,* 131 Tenn., 583, 175 S. W., 1139.

Some time after the acquisition of the Abernathy & Williams notes aforesaid, but before maturity, the bank sold one of the $1,000 notes to Mrs. Hargrove. Mrs. Hargrove supposed that the note was secured by a mortgage as stated on its face. This sale to Mrs. Har-

grove was made by Abernathy and there is no question but that the transaction was well within his authority as president of the bank. The answer of the bank's receiver filed herein discloses that it was the custom of the bank to dispose of such notes in such manner. The stipulation furthermore recites:

"It is further stipulated and agreed that one note or bond of $1,000 was by the Citizens Bank sold to Mrs. Mary Nolan Hargrove and the Citizens Bond & Investment Company, joint guardians of John Nolan Hargrove, a minor, on the 4th day of April, 1930, and sold to Mrs. Mary Nolan Hargrove, individually, a $1,000 bond of this issue on the 4th day of April, 1930."

It is idle, in view of this stipulation, to say that the bank did not make these transfers and that Abernathy was acting for himself in making the two transfers. Moreover the bank received and retained the proceeds of the sale of each of these notes.

Primarily the bill of Mrs. Hargrove seeks a recovery against the bank, under the implied warranty by a person negotiating an instrument by delivery. Section 7389 of the Code, section 65, Negotiable Instruments Law, is as follows:

"Every person negotiating an instrument by delivery or by a qualified indorsement, warrants:

"(1) That the instrument is genuine and in all respects what it purports to be;

"(2) That he has a good title to it;

"(3) That all prior parties had capacity to contract;

"(4) That he has no knowledge of any fact which would impair the validity of the instrument or render it valueless.

"But when the negotiation is by delivery only, the war-

ranty extends in favor of no holder other than the immediate transferee.

"The provisions of subdivision three of this section do not apply to persons negotiating public or corporation securities, other than bills and notes."

The statutory rule is about the same that previously obtained in this jurisdiction. *Ruohs* v. *Third Nat. Bank,* 94 Tenn., 57, 28 S. W., 303; *Richardson* v. *Marshall County,* 100 Tenn., 346, 45 S. W., 440, 443.

The instrument sold by the bank to Mrs. Hargrove purported on its face to be secured by a registered mortgage. Under the statute the bank, when it negotiated the note to Mrs. Hargrove, warranted that the instrument was "in all respects what it purports to be." There was an obvious breach of this warranty. The warranty was broken the moment it was made and the bank became liable to the purchaser for the loss occasioned by the breach. *Richardson* v. *Marshall County, supra.*

Conceding that the bank was not charged with Abernathey's knowledge, nevertheless "the bank's good faith in the sale cannot affect the question of its legal responsibility. Its fair intention does not render its breach any less certain in point of fact, or any less hurtful to its equally innocent customer, whose money it received without any real consideration." *Richardson* v. *Marshall County, supra.*

It is set out in the stipulation that "if Mrs. Hargrove were called upon to testify that she would swear that W. L. Abernathy, Jr., represented to her at the time she purchased said bond from said bank that the bond, together with other bonds of the same series were secured by a mortgage on 133 acres of land in the 16th Civil District of Giles County, Tennessee, known as the Amos Clark farm."

We can attach no importance to this stipulation. Mrs. Hargrove was not called upon to testify and could not have been called, under the statute, Code, section 9780, except by the adverse party. She sought judgment against the executor of Abernathy in this suit.

If there was competent proof that Abernathy made false representations to induce Mrs. Hargrove to purchase the note, the result would be the same. There was no fiduciary relation between the bank and Mrs. Hargrove or between Abernathy and Mrs. Hargrove. She is only entitled to a judgment whether the suit be treated as one for fraud or as a suit upon the implied warranty.

Rescission is not sought.

Mrs. Hargrove is, of course, entitled to a judgment against the makers of the $1,000 note that she owns. Payment of the note was guaranteed by the bond company by an indorsement in those words. She is accordingly entitled to a judgment against that institution. *Elgin City Banking Co.* v. *Hall,* 119 Tenn., 548, 108 S. W., 1068. After proper credit of sums realized on her judgment from those sources, she is entitled to file her claim, as a general creditor of the bank, for the balance due on the note, and receive ratable payment from the receiver of that institution.

The case of Mrs. Freeman differs from that of Mrs. Hargrove. The following appears in the stipulation of facts:

"It is agreed that W. L. Abernathy, Jr., invested Mrs. Freeman's money with her authority, that Mrs. E. C. Freeman for a number of years has been a resident citizen of the State of Oklahoma, and was residing in Oklahoma in 1930; that Abernathy had authority from

her to invest her funds, to enter her bank box in the vault of The Citizens Bank, to collect interest for her and to draw checks on her account at The Citizens Bank for making investments. It is further agreed that on April 4, 1930, said Abernathy invested $1,000 of the money of Mrs. E. C. Freeman in two of the notes for bonds dated September 1, 1928, executed by L. L. Williams and W. L. Abernathy, Jr., both of which were to mature September 1, 1933, said bonds being Nos. 167-1 and 167-2. Said Mrs. Freeman was not in Pulaski at the time of this last mentioned transaction, but did come to Pulaski in the summer of 1930, and found in her box the two notes or bonds of $500 each signed by L. L. Williams and W. L. Abernathy, Jr., and at this time she was advised by W. L. Abernathy, Jr., that said two bonds were secured by a mortgage on the Amos Clark lands, and Mrs. Freeman thought that said bonds were secured by a mortgage on said lands until after the death of W. L. Abernathy, Jr., when she, upon investigation, found that no mortgage was actually executed and recorded to secure these bonds, and that, on the other hand, said land had in the meantime been sold to Turner Davis.''

Mrs. Freeman, of course, knew that Abernathy was president of the bank. She was a customer of that institution, had an account and a safety deposit box there, and more than likely selected Abernathy as her agent because of his standing and reputation as a banker. Abernathy, agent for Mrs. Freeman, purchased the two $500 notes of the series involved from Abernathy, agent of the bank. Abernathy was the sole representative of both parties in the transaction. Under such circumstances both parties were charged with Abernathy's knowledge

in the matter. *Smith* v. *Bank,* 132 Tenn., 147, 177 S. W., 72. Knowing that he acted in a dual capacity, both as her agent and the bank's agent, Mrs. Freeman cannot now question Abernathy's authority.

 We therefore have a case in which a purchaser of a chose in action undertakes to rely on an implied warranty respecting that chose in action, the purchaser, through her agent, having full knowledge all the while that the warranty was false.

We think there can be no recovery under such circumstances upon an implied warranty. This is certainly true in the sale of a chattel. There is no implied warranty against defects of which the buyer has full knowledge. *Crescent Cotton Oil Co.* v. *Union Gin & Lumber Co.,* 138 Tenn., 58, 195 S. W., 770; *LeSueur* v. *Franklin Limestone Co.,* 14 Tenn. App., 67. Indeed, an express warranty will not, under our earlier decisions, be construed to cover defects known to the purchaser. *Long* v. *Hicks,* 21 Tenn. (2 Humph.), 305; *Fisher* v. *Pollard,* 39 Tenn. (2 Head), 315, 75 Am. Dec., 740.

We think that a like rule is applicable to the implied warranty imposed by statute upon one who negotiates an instrument by delivery. Such was the view expressed by Judge SHARSWOOD in *Flynn* v. *Allen,* 57 Pa., 482.

 It is universally held that equity will not relieve against false representations in a case where both parties have equal knowledge of the matter. That is to say that one cannot rely on representations known by him to be false. Fraud involves deception and if one knows the truth, and is not deceived, he is not defrauded. *Bridges* v. *Robinson,* 2 Coop. Ch., 720; *Oliver* v. *McLean,* 2 Shan. Cas., 280. For authorities generally see 26 C. J., 1134.

410

■ We think therefore that Mrs. Freeman is not entitled to any recovery against the bank. She is entitled to a judgment against the makers of her notes and against the bond company as guarantor of those notes.

■ ■ As noted in the quotation from the stipulation heretofore set out, the bond company and Mrs. Hargrove, as guardians of John Nolan Hargrove, purchased one $1,000 note of this series and a recovery on this note is sought, for the benefit of the minor, against all the defendants hereto. It seems that Abernathy, president of the bond company, actively managed the boy's affairs. Mrs. Hargrove was later informed of the purchase of the $1,000 note on the boy's account from the bank and acquiesced in it. The purchase of this note from the bank by the guardians, or guardian, was unlawful. A guardian's authority to lend and invest his ward's funds is purely statutory. While the guardian is authorized to lend his ward's surplus funds upon real estate, under conditions outlined in the statute, Code, section 8496, he is not authorized to purchase an existing mortgage. One who sells such a mortgage to a guardian participates in an illegal transaction. *Woodard* v. *Bird,* 105 Tenn., 671, 59 S. W., 143.

■ The bank knew that the bond company acquired this note as guardian. The bank received the bond company's "guardianship check." The bank thereupon became the recipient of a trust fund unlawfully diverted and became a trustee itself. Upon the remand of this case, if this fund can be traced under the rule laid down in *State ex rel.* v. *Bank of Bristol* (intervention of Jones), 165 Tenn., 461, 471, 55 S. W. (2d), 771, a recovery in full may be awarded for the benefit of the minor. In addition, John Nolan Hargrove is entitled to the same re-

lief decreed his mother against the various defendants, if found desirable in his behalf.

The pleadings are not in such condition as to adjust the equities that may arise among the defendants following our decree. These matters can be adjusted upon the remand.

Upon the remand of the case, it is suggested that a guardian *ad litem* be appointed to represent John Nolan Hargrove. His interests, if not now adverse to those of his guardians, may become so. Relief may be sought in his behalf against such guardians and he should be otherwise represented than by them.

The costs of this court will be divided among the receiver of the bank, the receiver of the bond company, Mrs. Hargrove, and Mrs. Freeman—one-fourth to each.

We think this is not a case for subrogation.