CARROLL *v.* EBLEN *et al.*

(*Knoxville,* September Term, 1941.)

Opinion filed November 29, 1941.

DANNEL & FOWLER, of Loudon, for appellant.

E. L. EBLEN, of Kingston, and J. RALPH TEDDER, of Rockwood, for appellees.

MR. JUSTICE DEHAVEN delivered the opinion of the Court.

S. F. Carroll, guardian of Arthur Eugene Wilkerson, a minor, filed his original bill herein against T. E. Eblen, former guardian of this infant, and W. A. Johnson, a surety on his guardian bond, and Jack Armour, admin-

istrator of the estate of W. C. Hartsell, deceased, a surety on the guardian bond, to recover $4,559.28 of funds belonging to his ward's estate and not accounted for by him.

The substance of the bill is that defendant Eblen, on January 10, 1929, qualified as guardian for Arthur Eugene Wilkerson, a minor, about six years of age, and made bond in the penalty of $250 with W. C. Hartsell and W. A. Johnson as sureties; that later, pursuant to an order of court, defendant Eblen, executed an additional bond as such guardian in the penalty of $5,000 with the same two sureties; that defendant Eblen, as such guardian, received from the chancery court of Loudon County, Tennessee, the sum of $4,594.80, at which time Eblen was cashier of the First National Bank of Kingston, Tennessee, and these funds were deposited by Eblen, as such guardian, in his said bank on time certificate of deposit drawing 4% interest without security and with advance maturity dates not subject to immediate withdrawal.

It is further averred in the bill that in December, 1931, the First National Bank of Kingston failed, said Eblen having been cashier thereof from the time he deposited his ward's funds until the bank closed, and at the time of the failure of this bank the certificate of deposit was still outstanding. It is averred that Eblen, guardian, received on the certificate of deposit the following dividends: June, 1932, $838.36; November, 1932, $718.59; May, 1933, $359.29; December, 1933, $383.25; January, 1936, $1,173.22, a total of $3,472.71.

It is further averred that when Eblen, guardian, received the first two of the above mentioned dividends, he deposited them in the First National Bank of Rockwood on time certificates of deposit, unsecured, and with advance dates and not subject to immediate withdrawal.

It is averred that on March 5, 1933, the First National Bank of Rockwood failed, at which time Eblen, guardian, had outstanding two time certificates of deposit, aggregating $1,540.26.

It is further averred that Eblen, guardian, from February, 1931, until November, 1939, never made any kind of settlement or report as such guardian and never renewed his guardian bond; that in the meantime the surety W. C. Hartsell died and defendant, Jack Armour, qualified as the administrator of his estate.

It is further averred that on November 23, 1939, Eblen appeared, in response to an order of the county court of Loudon County, and tendered a report and settlement, which showed a net balance of $284.38 due the ward and which report and settlement the court declined to approve; that Eblen also tendered his resignation as guardian, which was accepted by the court and the complainant herein, S. F. Carroll, was appointed guardian in his place and stead.

It is further averred that the defendant bank of Rockwood paid two dividends, totalling $539.09, and that a final dividend of not exceeding 5% may be anticipated.

It is further averred that defendant Eblen, as such guardian, grossly mishandled said estate; that he illegally and improperly involved or loaned said funds; it was illegal and improper for Eblen, guardian, to loan said funds to the bank of which he was cashier on an unsecured time deposit, and that it was illegal and improper to loan said funds to the Rockwood Bank on unsecured time deposit.

The bill further avers that defendant, Eblen, in his report of November 23, 1939, claimed credit of $1,023.45 for disbursements for and on behalf of his ward, and the correctness of the credit is admitted, but complainant

challenges the credit claimed for the loss in the Kingston Bank and the loss in the Rockwood Bank, totalling $2,321.02, which was claimed by Eblen in his settlement. It is averred that after giving defendant Eblen credit for all proper disbursements and after charging him with the legal rate of interest, he owes the estate of his ward the sum of $4,559.28, and the bill prays for a judgment against Eblen, guardian, and against W. A. Johnson, one of the sureties, and against Jack Armour, administrator of the estate of W. C. Hartsell, the deceased surety.

The separate demurrers of defendants to the bill were overruled by the chancellor. Whereupon defendant, Eblen, filed a separate answer to the bill, and defendants Johnson and Armour, administrator, filed a joint answer.

Defendants in their answer admit the substantial averments of the bill, but defendant, Eblen, avers that upon receipt of the money of his ward he deposited it on interest in the First National Bank of Kingston, but that it is untrue that he made no effort to invest the same in securities and at that time the only apparent safe and available place to invest said funds was in the bank on interest and at that time the First National Bank of Kingston was a solvent and going concern. He further averred that it is untrue that he was not authorized by law to place said funds in solvent banks, and he denied that he is not entitled to credit for the loss sustained in the two defunct banks. He denied that he made no effort to invest said funds or to purchase safe securities that would yield a reasonable rate of interest. He admits that the first and second dividends received from the Kingston Bank were deposited by him, as guardian, in the First National Bank of Rockwood, which Bank, he avers, was a solvent and going concern. He denied that he made no effort to invest these funds in securities that

were regarded as safe and yielded a reasonable return of interest. He denied that said funds were handled in any manner not authorized by law and denied that he should be charged with 6% interest. He avers that he made deposits in said banks in the utmost good faith, seeking to safeguard and protect said funds, and without any knowledge that either of these banks would fail to continue in business. He denied that he had done anything wrong or improper in the handling of his ward's funds and denied that he was chargeable with any negligence by depositing the funds in said banks for the reason that they were amply going concerns and doing a general banking business, and that the failure of these banks was brought about by an unusual depressed financial condition. He averred that the statutes of the State of Tennessee governing the investment of funds by guardians, the renewing of their bonds, the making of reports, are not mandatory but permissive only, and all allegations of the bill that he illegally invested any of said funds are denied.

Defendants, W. A. Johnson and Jack Armour, administrator, by their joint answer adopt the answer of defendant Eblen, and in addition thereto aver that both the Kingston Bank and the Rockwood Bank were at the times involved herein generally known and regarded to be banks of the strongest type and thoroughly sound, and they deny that there was any wrongdoing on the part of Eblen, guardian, in placing his ward's funds on deposit in these banks.

The defendant, Jack Armour, administrator, averred that he was appointed and qualified as administrator of the estate of W. C. Hartsell, deceased, more than eighteen months ago, and that complainant had never filed with him his alleged account or claim, which was matured or

accrued as a cause of action at the date of his qualification, and he pleaded this failure as a complete bar to complainant's suit against him as administrator.

The cause was set down and heard upon bill and answer. The chancellor found that the complainant is entitled to recover of the defendants the amount received by T. E. Eblen, as guardian of Arthur Eugene Wilkerson, less the credits by the county court of Loudon County, plus 4% interest from the date he received said funds to date, and pronounced judgment against defendants for the sum of $3,418.84 and all the costs of the cause.

Defendants have appealed to this court and assigned errors. Complainant has appealed from so much of the decree of the chancellor as limited the recovery to 4% interest on the funds received by Eblen, guardian.

The assignments of error made by defendants are, in effect, (1) That the chancellor erred in overruling the demurrer of the defendants to the original bill because there were no facts alleged charging Eblen, as guardian, with any negligence or wrongdoing in depositing his ward's funds in the First National Bank of Kingston, or in the First National Bank of Rockwood; (2) That the matters of fact averred in the answers by way of defense, or in avoidance, of the right to recover, were such as to nullify the averments of the bill and, therefore, the bill should have been dismissed; (3) That the chancellor erred in awarding a decree against defendants because of the deposit of said funds by Eblen, guardian, in the First National Bank of Kingston, there being no evidence that said Bank, at the time, was other than solvent; nor is there any evidence that Eblen, guardian, was guilty of any negligence in depositing the guardianship funds in this apparently solvent Bank; (4) That the chancellor erred in awarding a decree against defendants for the

deposit made by Eblen, guardian, in the First National Bank of Rockwood, there being no evidence that said Bank, at the time, was other than solvent, and there being no evidence that Eblen was guilty of any negligence or wrongdoing in making such deposit; (5) That the chancellor erred in overruling the demurrer of Jack Armour, administrator, because complainant's claim against the administrator was barred by the Statute of Limitations, and because the bill does not show that any claim or demand had ever been filed with the administrator within the time required by law.

Complainant assigns as error the action of the chancellor in limiting the interest on the recovery to 4%.

■■ As heretofore stated the cause was heard on bill and answer. In such case, the facts properly averred in the answer are taken as true. Complainant is not bound by averments of legal conclusions set up in the answer. Gibson's Suits in Chancery, section 439. While facts set up in avoidance will be taken as true, it remains a question of law for the chancellor to determine whether such facts are sufficient to avoid liability.

In the final analysis, the defense offered by Eblen, guardian, is that he deposited his ward's funds on unsecured time certificates in banks which were going concerns and believed to be solvent at the time the deposits were made, and that he acted in this regard in the utmost good faith and that at that time the only apparently safe and available place to said funds was to deposit the same so as to draw a reasonable rate of interest.

Eblen deposited his ward's funds in the Kingston Bank in January, 1929, on time certificates, without security and with advance maturity dates not subject to immediate withdrawal. The bank failed in December, 1931.

Thus he permitted his ward's funds to remain on deposit, without security, for approximately three years.

The deposit of guardian funds on time certificates not subject to immediate withdrawal is in legal effect an unsecured loan to the bank in which the funds are deposited. The authority of a guardian to invest guardianship funds is strictly statutory, and the guardian, if he invests the funds, must comply strictly with the statutory authority granted him. *Freeman* v. *Citizens' Natl. Bank,* 167 Tenn., 399, 70 S. W. (2d), 25.

Our Code is specific in respect to the investment of guardian funds. See sections 8496, 8497, 8498, 9596. The character of investments that may be made by a guardian are specifically set forth in the above mentioned sections. No authority is conferred therein to deposit the ward's funds in a bank on unsecured time certificates.

The asserted good faith of Eblen, guardian, in making investment of his ward's funds in the manner that he did, must be held immaterial. If good faith in making unauthorized investments by a guardian of his ward's funds was the test, then the statutes specifying and regulating the character of investments that a guardian is authorized to make would stand emasculated. The defense set up in the answer is not sufficient to excuse defendants from the consequences of the guardian's illegal investments. No amount of economic depression can relieve defendants from the results of making an illegal loan. If, as the guardian asserts, he could not find at that time a safe investment, he should have applied to the court for instructions. It might have well been that the court would have ascertained that United States bonds, bonds of the State of Tennessee, and of political subdivisions thereof were plentiful on the market.

Defendant, Jack Armour, administrator, pleads the

Statute of Limitations of eighteen months as provided in Code 8225. He qualified as administrator of W. C. Hartsell, deceased, one of the sureties on Eblen's guardianship bond, on August 5, 1938. Complainant was appointed guardian on November 27, 1939. This suit was filed November 29, 1939. The point made is that complainant did not file an itemized statement of his claim with the administrator within eighteen months of the administrator's qualification. On the date of the administrator's qualification, Eblen was guardian. Complainant brought this action two days after his qualification as guardian of the minor. It is true that he filed no statement of the minor's claim with the administrator, but a detailed statement of the claim was set forth in the bill. Code 8225 is as follows:

"The creditors of deceased persons, whether the former live within or without this state, shall, within eighteen months (which period shall be deemed to include the six months protective period) from the qualification of the executor or administrator, file with the latter their accounts, demands and claims, that are matured or accrued causes of action at the date of such qualification, and bring suit for the recovery thereof, or be forever barred. As to accounts, demands and claims not so matured or accrued, the period allowable before bar is six months from the date the cause of action thereon accrued. (Modified)"

The liability of the surety was contingent upon the liability of the principal on the bond. Until the liability of Eblen as guardian was adjudged, no natural claim existed against the surety. To ascertain the guardian's liability and that of the sureties this suit was necessary; because all of the defendants denied the liability of the guardian. When complainant recovered judgment,

then for the first time complainant had a claim fixed in amount. Where, as here, the administrator was promptly advised of the nature and amount of the claim against the deceased surety by bill, and the administrator joins with the principal on the bond in denying the validity of the claim, the demand cannot be defeated by the technical defense that the claim was not filed with the administrator. In a real sense the claim was filed with the administrator by copy of the bill. If the administrator was here asserting that he would have paid off the claim had it been presented to him before suit, a different situation would exist and complainant would be onerated with the costs of the case.

We find no merit in the assignments of error filed by defendant.

■ Complainant contends that the chancellor was in error in limiting interest on the recovery to 4%. Code 8499 provides in part that, ''If the guardian shall not make specified investments in or on the securities above named, he shall be charged with such a rate of interest not exceeding six per cent., as the court in which the guardianship is pending may determine to be the fair value of the use of money at that time.'' The county judge found that Eblen should be charged with interest, but did not fix the rate. The chancellor, who had the whole matter of settlement before him, fixed the rate of interest at 4%. We see no valid reason for disturbing this allowance and find no merit in complainant's assignment of error.

After a careful consideration of the whole record and the several assignments of error we have arrived at the conclusion that the decree of the chancellor in all things must be affirmed.